RAWLS, Judge.
Appellant, Sidney Goodwin, poses two points in this appeal, viz.:
1. The court erred in refusing to grant the appellant’s motion to vacate and in refusing to allow the appellant to enter a plea of not guilty.
2. The court erred in failing to grant the appellant’s motion for a jury trial upon the issue of whether or not the said appellant was in contempt of court.
Goodwin in proper person filed on October 4, 1968, a motion to vacate judgment and sentence in the instant cause alleging the following substantial matters: (1) That he was robbed of a free and voluntary plea. (2) That his plea of guilty was an involuntary plea induced by fear, threats, promises, narcotic drugs and inhumane torture. (3) That he is not guilty of the crime for which he now stands convicted and can prove his innocence. (4) That he did not knowingly, willingly, intelligently and understandingly waive his right to have a jury trial because on the 28th day of August, 1968 (date of sentencing), he was in severe pain and under the influence of narcotic drugs and strong sedatives. Goodwin alleged in his motion that for two days before he was taken to court on the charges, he was held in a torture chamber in the Bay County jail, was denied any and all humane treatment, was sadistically treated, was under the influence of narcotic drugs, and “ * * * I was taken to trial, not knowing what was said by me, nor against me, because of these conditions, and given seven years imprisonment. *7 It was several days later before I could use my own faculties. Then and only then did I realize the injustice perpetrated against me. * * * The Circuit Court is guilty of robbing defendant of his right to defend himself. His right to a jury trial and his right to make a free and voluntary plea, by placing defendant in a torture chamber, and by using a narcotic drug to induce a plea of guilty. Just as much so as one who places a shotgun in one’s back and robbing one of his collateral.” [Emphasis supplied.]
On October 21, 1968, the trial court entered an order finding that the defendant was entitled to be heard on his motion. The order directed the officials of the Division of Corrections to release the defendant to the Sheriff of Bay County for transportation to Bay County and to safely hold the defendant in custody pending a hearing upon the motion to vacate. An extensive hearing was held by the trial judge on the 8th day of November, 1968, ar which time Goodwin was represented by employed counsel. The net result of this hearing and subsequent proceedings was a denial of the motion to vacate and an imposition of a judgment of contempt by the trial judge with a sentence of six months to begin at the end of the instant sentence.
We revert to the original record in considering appellant’s first point that the trial court erred in denying his motion to vacate. On the 15th day of July, 1968, an information was filed by the State’s Attorney charging Sidney Goodwin with shooting into a public building. Goodwin was duly arraigned, represented by employed counsel and on the 19th day of August, 1968, the following proceedings were had before the trial judge:
“ [DEFENSE COUNSEL]: Your Honor, this is Sidney Goodwin before you in Case Number 68-200, Docket Number D-2922. We have heretofore appeared before the Court and entered a plea of not guilty and been furnished with a copy of the information. We now ask leave of Court to withdraw our plea of not guilty and enter a plea of guilty to the charge of shooting into a public building.
“THE COURT: All right, the motion to withdraw the plea * * * will be granted.
“ [DEFENSE COUNSEL]: We tender to the Court a plea of guilty to this charge and I want to say this on the record to the Court because I ■ have talked with Mr. Goodwin on several occasions and I want to say this to the Court here and put it on the record. Mr. Goodwin is also charged before this Court at this time with possession of a firearm by a convicted felon and three counts of robbery. All five of these cases were set for trial this morning before the Court. Now, this plea that we tender the Court has been discussed with the State Attorney’s Office and it is my understanding that if Mr. Goodwin will enter this plea; if this is his desire to enter this plea, the State Attorney’s Office will nolle pross the three counts of robbery and the count of possession of a firearm by a convicted felon that are presently pending against Mr. Goodwin. I have told Mr. Goodwin this and in addition we understand that they will nolle pross the other counts against the other co-defendants, but not jointly charged. Those Defendants are charged separately in separate informations but he understands this as well.
“He further understands that there will be a joint recommendation by counsel here before the Court that the Court will entertain the sentence of seven years and if you cannot do so, if you cannot impose a sentence of seven years, that you will permit him to withdraw the plea of guilty and go to trial.
“Now, all of this he understands and in light of this he also understands the penalty involved for robbery. I have told him and he is fully conscious of the fact that those are life sentences or any term *8 less than life, but that three life sentences could be imposed if he is convicted in the robbery cases. In addition, he has been told, and understands the penalty for possession of a firearm by a convicted felon is ten years in the state penitentiary. He understands and knows the penalty in this case. The maximum penalty is ten years in the state penitentiary or five years in the county jail or five thousand dollars fine.
“Now, Mickey,—
“THE COURT: Let me ask the State Attorney if you agree with the announcements made by * * * [Defense Counsel].
“[STATE ATTORNEY]: The State Attorney agrees that should Mr. Goodwin plead guilty to the offense of shooting into a public building, in violation of Statute 790.19, that the State will announce a nolle pross in the other cases now pending against Sidney Goodwin in the Circuit Court of Bay County.
“THE COURT: Do you also join in the recommendation that the Court sentence Mr. Goodwin to seven years ?
“ [STATE ATTORNEY]: The State will join in the recommendation that the sentence of seven years be imposed.
“THE COURT: All right. Mr. Goodwin, do you agree with everything that your counsel has said ?
“THE DEFENDANT: Yes, sir.
“THE COURT: You understand that you have a right to a trial by jury on all of these charges to determine your guilt or innocence?
“THE DEFENDANT: (Indicating in the affirmative).
“THE COURT: Do you feel that you have had plenty of time to discuss this matter with * * * [Defense Counsel] ?
“THE DEFENDANT: Yes, sir.
“THE COURT: Do you feel you have a full understanding of all of your legal rights ?
“THE DEFENDANT: Yes, sir.
“THE COURT: Has anybody pressured you in any way or persuaded you in any way to plead guilty to shooting into a public building other than the announcements made by * * * [Defense Counsel] ?
“THE DEFENDANT: No, sir.
“THE COURT: Have you been forced in any way?
“THE DEFENDANT: No, sir.
“THE COURT: Are you, Mr. Goodwin, actually guilty of shooting into a public building ?
“THE DEFENDANT: Yes, sir.
“THE COURT: You’re not tendering this plea of guilt to the Court merely because you want to get the other cases dismissed when the true fact is that you did not actually shoot into the public building ?
“THE DEFENDANT: (Negative response).
“THE COURT: Do you tender this plea freely and voluntarily realizing that you will probably get a sentence of seven years ?
“THE DEFENDANT: Yes, sir.
“THE COURT: The Court has announced to Counsel previously that where there is a joint recommendation as to a particular sentence in a case that if the Court cannot honor this recommendation the Court will permit the Defendant to withdraw the plea of guilty and stand trial. Of course, in this event —I mean in this case it will be necessary that the State withhold the entry of the nolle pross on the other cases until your plea of guilty is actually accepted and sentence imposed, if it is.
*9 “Your counsel has announced to the Court that you have a child that must be operated on shortly. Is this correct?
“THE DEFENDANT: Yes, sir. Friday.
“THE COURT: What is the nature of the operation?
“THE DEFENDANT: Tonsils infected. She’s got some kind of poison in her mouth.
“THE COURT: If the Court accepts this plea and permits you to remain out on bond, will you surrender yourself for sentencing Wednesday of next week?
“THE DEFENDANT: Yes, sir.
“THE COURT: Will the operation be completed by that time ?
“THE DEFENDANT: Yes, sir, she should still be in the hospital, but everything will be all right I believe.
“THE COURT: All right, sir, I will accept your plea of guilty to the crime of shooting into a public building and withhold the imposition of sentence until Wednesday of next week. You will be released on the same bond that you have in effect at this time and this bond will be binding on you until Wednesday of next week at 9:00 o’clock in the morning. That will be August 28, 1968, here in chambers just like we are now. Is there any question that you wish to ask the Court in connection with this matter or any phase of it ?
“THE DEFENDANT: No, sir.
“THE COURT: You’re fully satisfied with everything your counsel has done and announced to the Court ?
“THE DEFENDANT: Yes.”
On the 28th day of August, 1968, the trial judge imposed sentence as reflected in the following proceedings:
“THE COURT: Is your correct name Sidney Goodwin?
“THE DEFENDANT: Yes, sir.
“THE COURT: Mr. Goodwin, you recently entered a plea of guilty to the crime of shooting into a public building. Has anything occurred from that date until this date that would make you want to withdraw that plea ?
“THE DEFENDANT: No, sir.
“THE COURT: You’re fully satisfied with the way your attorney * * * has represented you ?
“THE DEFENDANT: Yes, sir.
“THE COURT: This plea was made by you freely and voluntarily and simply because you wanted to confess your guilt and for no other reason ?
“THE DEFENDANT: Yes.
“THE COURT: Mr. Goodwin, frequently when a person is sentenced to a term in prison the Court will receive a number of letters and petitions indicating that the Defendant was misrepresented his counsel or misled by public officials or didn’t understand fully the situation he was in at the time he entered his plea. Now, if anything of this nature has occurred or if there is any reason whatsoever you are dissatisfied with this plea, this is the time for you to speak. Is there any reason that you wish to offer the Court, any reason whatsoever, why you should not now be sentenced on this plea?
“THE DEFENDANT: No, sir.
“THE COURT: * * * [Defense Counsel], are you aware of any reason?
“ [DEFENSE COUNSEL]: No, sir.
“THE COURT: Having offered the Court no valid reason why sentence should not now be imposed upon you, the Court adjudges you to be guilty and it is the sentence of the law and judgment of the Court that you be confined to the Department of Corrections of the State *10 of Florida for and during a period of seven years for your said offense.
“Now, Mr. Goodwin, it is the duty of the Court to advise you that you have 90 days from this date from which you may appeal this sentence, judgment, and conviction. If you desire to have counsel for any such appeal and are unable to hire one yourself, the Court will appoint one for you free of charge. Have you discussed the possibility of an appeal with * * * [Defense Counsel] ?
“THE DEFENDANT: No, sir.
“THE COURT: Do you feel that you understand that you do have a right to appeal this matter within 90 days ?
“THE DEFENDANT: Yes, sir.
“THE COURT: And you also understand that the Court will, if you so desire, appoint counsel to confer with you?
“THE DEFENDANT: Yes, sir.
“THE COURT: Free of charge to you in connection with appeal.
“THE DEFENDANT: Yes.
“THE COURT: * * * [Defense Counsel], would you undertake as a friend of the Court at this time to advise Mr, Goodwin after this matter is concluded here fully with respect to his rights to appeal and the probable results of any such appeal ?
“ [DEFENSE COUNSEL]: Yes, sir.
“THE COURT: All right. Will you be satisfied with * * * [Defense Counsel] to advise you in that respect, Mr. Goodwin ?
“THE DEFENDANT: Yes, sir.”
It was upon the above record that the trial judge considered Goodwin’s motion to vacate judgment and sentence. The extensive hearing was reported in a 130-page transcript. Succinctly, Goodwin testified that his attorney and father pressured him into agreeing to plead guilty because the State had, in addition to the charge of shooting into a public building, three charges of armed robbery and one charge of carrying a gun by a convicted felon. He further testified that he was concerned about his little girl’s impending tonsil operation, and “ * * * I knew that if I went on to Court I was going to be found guilt and I was going to be put in jail because I did not have a counsel that would fight for me.” As reflected above, Goodwin, on August 19th, entered his plea of guilty conditioned upon successful negotiations by his attorney for the State to nolle prosequi the three charges of armed robbery and possession of a deadly weapon by a convicted felon.
Goodwin’s primary grievance concerned the August 28 proceedings. He testified that on the preceding Saturday night he began drinking; that the doctor had given him some pills in connection with treating his burned hand, “I was pretty well messed up in the head, whiskey and pills together” ; that he then went home, cut his throat and was rushed to the hospital. After the doctor sewed up his neck, he was placed in a psycho ward. On Monday he was removed from the hospital and incarcerated in the “tank” located in the Bay County jail. Goodwin further testified that while he was in the tank, the jailers started giving him pills; that he saved up seven, eight or nine pills and started taking them the night before he was to appear in court for sentencing; that he had intended to withdraw his plea of guilty, but his mind was so foggy that he did not carry out his intention; and that he did remember pleading guilty and being sentenced but did not wish to do so.
A psychiatrist who examined Goodwin on Saturday night, August 24, and saw him on August 25 and 26, testified it was his opinion that Goodwin was not psychotic but was potentially dangerous to himself and others; that he had called the trial judge and told him Goodwin should be removed from the hospital because he felt “* * * *11 we could not provide adequate protection for him * * *. I felt more that he had the tendency to lose control * * and in his opinion Goodwin had not attempted to commit suicide. The psychiatrist further testified that the last medication which he administered to Goodwin was at noon on Monday and would have been eliminated within 24 hours.
The medical doctor who attended Goodwin testified that at about 4:30 p.m. on August 24 he treated a burn on Goodwin’s right hand — “* * * this was a minor thing * * gave him an injection of penicillin and a prescription for an antibiotic. At approximately 11:15 p.m. on the same night, he examined a relatively superficial laceration on Goodwin’s neck, and sutured the wound; that because the laceration was allegedly self-inflicted, he referred him to the psychiatrist; that Goodwin was not admitted to the hospital because of the laceration; that the only “pills” he prescribed for Goodwin was the antibiotic for the burned hand, and even if Goodwin did take what remained from this prescription to the jail with him, these would have no effect on his mental faculties or reasoning ability.
The Court of its own motion called Goodwin’s trial attorney. In response to the Court’s questions, the attorney stated that he fully apprised Goodwin of the three armed robbery charges and other pending charges, and in his opinion these were bona fide charges; that he had represented Goodwin with respect to various criminal charges since 1961; and that he was satisfied that Goodwin was not suffering any incompetency, mental or physical, at the time of sentencing. The Court made an observation that when Goodwin appeared before him for sentencing (on the 28th) he gave no indication of anything being wrong with him physically or mentally. Testimony by Goodwin’s parents tends to corroborate his contentions, and testimony by jail attendants corroborated the State’s position.
We have quoted freely from this record in order to pinpoint the meticulous action of the trial court in preserving to this defendant his constitutional rights, Other than Goodwin’s perjured testimony there is no credible evidence to sustain his allegation that the trial court or any State officials used “* * * a narcotic drug to induce a plea of guilty.”
The judicial system of this State has jealously guarded the rights of individuals charged with the commission of crimes. This “guardian angel” consideration extends from the time of arrest, throughout trial and appeal, and is reactivated in consideration of collateral attacks. The continual review of convicted felons’ “trumped-up” charges against the judicial system has in many instances, such as the one here considered, reached a ludicrous end. Goodwin alleges that the trial court “robbed” him of his right to defend himself. It is our conclusion that if any larceny is present in this cause, such is on Goodwin’s part in “robbing” that taxpayers of the extensive costs involved in this collateral attack founded upon an obviously perjured petition for relief and substantiated by the perjured testimony of Goodwin.
As to Goodwin’s second point, we simply observe that one incarcerated in prison is not immune from the contempt process of court when he knowingly and willfully presents false testimony in the presence of the trial judge. The ensuing sentence, which is the subject of this review, is a minor one for a period of six months and may be imposed by the trial judge without a trial by jury.
Lastly, we commend to all trial judges the type of careful and meticulous concern for the rights of the defendant as was displayed by the learned judge in the trial of this cause. Such exemplary concern will result in a final judgment immune from constitutional infirmities, and should lay the matter to rest without new *12 hearings and new trials being required during the period of incarceration.
Affirmed.
JOHNSON, C. J„ and SPECTOR, J„ concur.